UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, Plaintiff,

v.

PACKAGING CORPORATION OF AMERICA, Defendant.

No. 5:92–CV–0078.

United States District Court, W.D. Michigan, S.D.

Dec. 28, 1992.

## OPINION

QUIST, District Judge.

The United Steelworkers of America (Union) brought this action against Packaging Corporation of America (Company) to compel the Company to arbitrate the discharge of an employee, David N. Hoffrichter. The collective bargaining agreement (Labor Agreement) between the parties provided that new employees would serve a 60–calendar–day probationary period during which they could be discharged for any reason and such a discharge would not be a grievance under the Labor Agreement. By an Opinion and Order dated October 22, 1992, this Court held that the Court must decide the date on which the Company discharged Mr. Hoffrichter to determine whether the discharge is subject to the grievance and arbitration procedures of the Labor Agreement. Mr. Hoffrichter's discharge is subject to the Labor Agreement if he was discharged after his 60–calendar–day probationary period, and his discharge is not subject to the Labor Agreement if he was discharged during his probationary period.

## FINDINGS OF FACT

*Stipulated Facts*

The parties stipulated to the facts set forth in this section. On October 9, 1991, the Company employed Mr. Hoffrichter as a labor pool employee. A May 9, 1989, collective bargaining agreement between the Company and the Union governs the terms and conditions of Mr. Hoffrichter's employment. Under the agreement, Mr. Hoffrichter was to serve a 60–calendar–day probationary period.

Mr. Hoffrichter's probationary period was scheduled to expire at midnight, December 7, 1991. On Friday, December 6, 1991, Mr. Hoffrichter worked the day shift. On that day, no supervisor told Mr. Hoffrichter that his employment was terminated. Mr. Hoffrichter left work at 2 p.m. and was scheduled to return to work the evening of Tuesday, December 12, 1991.

On Friday, December 6, 1991, the Company's Assistant Industrial Relations Director, Sandra L. Spahr, called the President of the Union's Local 12585, Robert Lipe, to request a two-week extension to the probationary period of Mr. Hoffrichter. Mr. Lipe discussed the possibility of an extension with the Grievance Chairman of Local No. 12585, Thomas Stefanski. Later that day, Mr. Lipe advised Ms. Spahr that the Union would not agree to an extension.

Neither Mr. Lipe nor Mr. Stefanski was notified about the termination of Mr. Hoffrichter on December 7, 8, or 9, 1991. On December 10, 1992, Mr. Lipe received a letter when he reported to work advising him of Mr. Hoffrichter's discharge. This letter was in an envelope taped near the time clock.

On December 10, 1991, Mr. Stefanski contacted Mr. Hoffrichter about the discharge. Mr. Hoffrichter stated that he was unaware of the discharge.

On December 12, 1991, Mr. Hoffrichter received a letter in the mail informing him that his employment was terminated. The envelope was postmarked December 9, 1991.

*Findings Based on Testimony*

On December 9, 1992, this Court held a one day bench trial. The Court heard the testimony of Mr. Allen Gagstetter, the Company's Industrial Relations Director; Ms. Spahr; Mr. Dennis Green, the Postmaster of Manistee; Mr. Michael Spahr, the husband of Sandra Spahr; and Mr. Stefanski. The

Court makes the following findings of fact based on the testimony of these witnesses.

Mr. Gagstetter met with Mr. Chuck Smith, the production manager of the plant, at 7 p.m. on December 6, 1991, to discuss the employment of Mr. Hoffrichter. They discussed the need to make an immediate decision on Mr. Hoffrichter's employment status because of the December 7 deadline. They decided to terminate Mr. Hoffrichter.

At about 12:30 p.m. on December 7, 1991, Mr. Gagstetter first attempted to telephone Mr. Hoffrichter at his home to inform him of his discharge. Nobody answered. Mr. Gagstetter tried unsuccessfully to contact Mr. Hoffrichter two or three more times in the early afternoon. At about 3 p.m., Mr. Gagstetter contacted Ms. Spahr at her home and told her that Mr. Hoffrichter was terminated and that he had been unable to inform Mr. Hoffrichter. Mr. Gagstetter told Ms. Spahr that she should send Mr. Hoffrichter a letter postmarked that day informing Mr. Hoffrichter of his discharge. Mr. Gagstetter told Ms. Spahr to send Mr. Hoffrichter a letter in order to avoid any confusion about the date on which Mr. Hoffrichter was discharged. Mr. Gagstetter and Ms. Spahr worked out the first sentence of the letter together. At about 4 p.m., Mr. Gagstetter again called Mr. Hoffrichter's home. This time, a young-sounding female answered and told Mr. Gagstetter that Mr. Hoffrichter would not be home until Tuesday. Mr. Gagstetter left no message.

Ms. Spahr and her husband went to the Company plant at 6 p.m. to type a letter to Mr. Hoffrichter. Ms. Spahr and her husband found a Christmas stamp to put on the envelope because the Company's postage meter would not be running. At 7:05 p.m., Ms. Spahr and her husband deposited the letter [1] in the local letter mailbox located outside the Manistee Post Office. Ms. Spahr also attempted to telephone Mr. Hoffrichter on De-

---

1. December 7, 1991
   Mr. David Hoffrichter
   410 Third Street
   Manistee, MI 49660
   Dear David:
   We made several unsuccessful attempts to call you; therefore, this letter is to advise you that we are not extending your employment beyond your probationary period and you are terminated as of 12–7–91.
   Sincerely,
   Sandra L. Spahr
   Assistant Industrial Relations Director
   PC:  A. Gagstetter
        C. Smith
        B. Lipe

cember 7, 1991 but reached a young-sounding female and, therefore, did not leave a message.

The last collection from the local mailbox outside the Manistee Post Office on Saturdays is at 5 p.m. The envelope that Mr. Hoffrichter received from the Company had a Monday (12/9/91) AM cancellation which would be consistent with a letter mailed after 5 p.m. on Saturday, December 7. The envelope also contained a yellow change of address sticker. Change of address mail is cancelled and then sent to Grand Rapids for processing. The change of address processing would cause a delay in delivery.

In the past, Company notices of employee discipline have been delivered to Mr. Stefanski by placing them in a locked box. However, no other probationary employee had ever been terminated between 1975 and 1991. Moreover, only four to six bargaining unit employees had been terminated during that same time period. Only six to ten other employees received written reprimands during that period.

The Court's findings are based on its opportunity to observe the demeanor of the witnesses. Ms. Spahr appeared to be honest and forthright. If she did not remember something, she said so. Although Ms. Spahr had a motive not to tell the truth as to when she deposited the letter in the mail, the Court believes she was telling the truth. Likewise, her husband appeared truthful. The Spahrs' testimony is further corroborated by the testimony of the Postmaster. The Postmaster's testimony helped explain the discrepancy between the mailing date and the postmark date. In addition, the Christmas stamp, instead of the company's postage meter, on the envelope is consistent with a weekend mailing.

### THE DISPUTE

The parties articulate two methods by which Mr. Hoffrichter could be terminated. The Company claims that no notice of termination was required because the contract does not specify that a probationary employee be notified of his discharge within the 60-calendar-day period. However, the Company claims that under the "Mailbox Rule" Mr. Hoffrichter was notified of his discharge on the date that the letter was placed in the mailbox and that receipt of the letter was not required. The Union argues that the termination letter may not have been mailed on December 7, and, if the letter was mailed, the "Mailbox Rule" does not apply to this situation. The Union claims that the Court should look at the past practice for terminating an employee to determine when Mr. Hoffrichter was terminated.

### CONCLUSIONS OF LAW

The language of the Labor Agreement between the Company and the Union states only that a probationary employee can be discharged for any reason within the 60-calendar-day probationary period. The Labor Agreement does not state that the employee must be notified of the discharge before it is effective, nor does the Labor Agreement state how the employee should be notified. Moreover, no probationary employee had been discharged at least since 1975. Therefore, no common practice existed for the discharge of probationary employees. The discharge of four to six bargaining unit employees in the last seventeen years does not create a common practice as to the discharge of probationary employees because of the few number of discharges and because the concerns of discharging probationary employees are different from bargaining unit employees—the latter are subject to the Labor Agreement and may only be fired for cause.

Given the facts that the Labor Agreement does not state that a probationary employee must be notified before the decision to discharge is effective and no clear guidelines exist on how to notify the employee, the Court must decide whether the Company reached a final decision to discharge Mr. Hoffrichter and took reasonable steps to publish its decision within the probationary period. The Court believes that the Company did.

Absent a reversal of decision by the Company, the letter was an unequivocal step and indicator that Mr. Hoffrichter was discharged. Mailing the letter clearly indicated

that the Company had reached a final decision within the probationary period. The Company's actions would be less clear had it not taken this significant step to indicate its decision. Absent the letter, the Court would be presented with a much more difficult task of trying to ascertain whether a final decision had been made or whether the decision was still being made.

Moreover, the Company took reasonable steps to inform Mr. Hoffrichter of his discharge. The Company tried to reach Mr. Hoffrichter by telephone several times on December 6, 1991. Both Mr. Gagstetter and Ms. Spahr contacted a young-sounding female at Mr. Hoffrichter's residence. The young-sounding female told Mr. Gagstetter that Mr. Hoffrichter was out of town until December 10, 1991. Mr. Gagstetter testified that he did not leave a message with this young-sounding female because he believed she was Mr. Hoffrichter's daughter and did not think that it would be appropriate to inform Mr. Hoffrichter's daughter of the discharge. Unable to contact Mr. Hoffrichter by telephone, the Company decided to send Mr. Hoffrichter a letter to confirm the fact that the decision was made within the probationary period.

The Union argues that the Company should have notified Mr. Hoffrichter on December 6—Mr. Hoffrichter's last day of work. However, the Labor Agreement states that the probationary period lasts for *60* calendar days. The Court cannot write a new contract for the parties. Therefore, the Company should be allowed to use all 60 calendar days to make its decision. The facts clearly establish that on the 59th or 60th day the Company made its decision and acted to carry out its decision. Mr. Hoffrichter cannot avoid the Company's decision—intentionally or unintentionally—by being unavailable on the date that the decision is made.

For the reasons stated, this Court finds that Mr. Hoffrichter was a probationary employee when he was discharged; and therefore, the Company does not have to submit his discharge to arbitration. A Judgment consistent with this Opinion will be entered by the Court.